UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 2:20-CR-117 JD |
| DAVID REGINALD VALENTINE | |

**OPINION AND ORDER**

The Defendant, David Valentine, has moved for the Court to allow him to withdraw his guilty plea and for the Court to dismiss his indictment. (DE 72.) Mr. Valentine argues he should be allowed to withdraw as the charge he pled guilty to is unconstitutional in light of the Supreme Court's recent decision in *New York State Rifle & Pistol Association v. Bruen*, 142 S.Ct. 2111 (2022). He also argues that his indictment fails to state an offense for several reasons unrelated to the *Bruen* decision. For the following reasons, this motion will be denied.

**A. Factual Background**

A federal grand jury returned a five-count indictment against Mr. Valentine in August 2020, charging him with five violations of knowingly making a materially false statement in the course of purchasing a firearm as prohibited by 18 U.S.C. § 922(a)(6). (DE 1.) All five counts allege Mr. Valentine lied about his state of residence and address. In addition, Counts Two and Three allege that Mr. Valentine also lied about being the actual purchaser of the firearm when, in fact, he was purchasing the firearm for another person (a practice known as "straw buying"). These false statements were made when Mr. Valentine completed Bureau of Alcohol, Tobacco, Firearms, and Explosives Form 4473 and provided false answers to questions on the form. Mr. Valentine subsequently entered a plea agreement with the Government, pled guilty to Count Two

of the indictment before a federal Magistrate Judge, and his plea was accepted by this Court on February 2, 2022. (DE 46.)

Therefore, there is no factual dispute in this case about whether Mr. Valentine has committed acts sufficient to be convicted under Count Two and the Court only needs to consider the legal questions raised by his motion.

### B. Legal Standards

A defendant does not have an absolute right to withdraw a guilty plea, but may withdraw a guilty plea after the court accepts the plea and before sentencing "if the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B); *United States v. Wallace*, 276 F.3d 360, 366 (7th Cir. 2002). Legal innocence may be a fair and just reason for withdrawing a guilty plea. *United States v. Harper*, 934 F.3d 524, 528 (7th Cir. 2019). Mr. Valentine argues that because the statute of his conviction is unconstitutional, he is legally innocent and should be allowed to withdraw his plea.

A defendant can move before trial to dismiss an indictment for failure to state an offense. Fed. R. Crim. P. 12(b)(3)(B). A defendant can make such a motion on the basis that the charged offense is based on an unconstitutional statute. *United States v. Holden*, 2022 WL 17103509, *2 (N.D. Ind. Oct. 31, 2022) (internal citations omitted).[1] A constitutional challenge to a statue can be brought either as a facial challenge, or an as-applied challenge. Mr. Valentine brings both

---

[1] The Court will note that despite Mr. Valentine's characterization, *Holden* did not review the constitutionality of § 922(a)(6). (*See* DE 72 at 1.) *Holden* found that 18 U.S.C. § 922(n) (barring those under indictment from receiving firearms) was unconstitutional, and accordingly the Defendant's prosecution under § 922(a)(6) could not proceed because his lie about his indictment status was no longer material. At least one other sister court has reached the opposite conclusion about this type of prosecution. *United States v. Combs*, 2023 WL 2144150, *2 (E.D. Ky. Feb. 21, 2023) (denying a motion to dismiss a § 922(a)(6) indictment even though the underlying statute for the lie, 18 U.S.C. § 922(g)(8), was struck down by the same court).

types of challenges in his motion. To succeed on a facial challenge to the constitutionality of a statute, the moving party must show that the statute is unconstitutional in all applications. *City of L.A. v. Patel*, 576 U.S. 409, 415, 418 (2015). To succeed on an as-applied challenge, the moving party must show it is unconstitutional because of the way it was applied to the particular facts of their case. *See United States v. Phillips*, 645 F.3d 859, 863 (7th Cir. 2011).

**C. Discussion**

Prior to discussing Mr. Valentine's Second Amendment arguments, the Court will address the other arguments Mr. Valentine raises in his motion. The Court will then turn to the *Bruen* related challenge.

**(1)** *Mr. Valentine's nondelegation and statutory interpretation arguments are inappropriate to raise in this motion and without merit*

Mr. Valentine raises three arguments challenging the sufficiency of his indictment which are entirely unrelated to *Bruen* or the Second Amendment. These arguments allege that his indictment fails to state an offense under Rule 12(b)(3) of the Federal Rules of Criminal Procedure. The three specific arguments are: (1) that § 922(a)(6) and Form 4473 violate the nondelegation doctrine, (2) that his residential address is not material information under § 922(a)(6), and (3) that straw buyers cannot be prosecuted under § 922(a)(6).

The Court will begin by noting it is unclear how these arguments can be properly raised in this motion. As will be thoroughly explained later in this order, these arguments are entirely unrelated to *Bruen* and could have been proffered well before the plea agreement was concluded. As the Government correctly notes, an argument that an indictment fails to state a valid offense

generally needs to be filed pretrial. Fed. R. Crim. P. 12(b)(3)(B)(v). There are exceptions to this general rule, including for circumstances involving an intervening change in law. However, *Bruen* did not adjudicate § 922(a)(6), nor any federal statute at all. Moreover, these three arguments by Mr. Valentine do not involve the Second Amendment, but rather two issues of statutory interpretation and an unrelated constitutional law challenge.

This Court has previously noted that there is nothing in *Bruen* which suggests the Supreme Court sought to "overturn the entire statutory construction apple cart," and in fact the text of the decision clearly indicates an intent to be read in accord with the pre-existing statutory interpretation framework. *United States v. Posey*, 2023 WL 1869095, *7 (N.D. Ind. Feb. 9, 2023). Mr. Valentine has offered no other rationale as to why these arguments would be appropriately raised now. In other words, he has not explained why the basis for this motion was not reasonably available prior to *Bruen* being decided or the entry of his plea agreement. Fed. R. Crim. P. 12(b)(3)(B)(v). As such, the Court would reject these arguments as improperly raised. In the alternative, each would fail on its merits.

(a) *The non-delegation doctrine challenge is waived as underdeveloped and is without merit*

In a footnote to his motion, Mr. Valentine argues that this Court has a basis for granting his motion based upon the non-delegation doctrine. According to Mr. Valentine, Form 4473 is created by the United States Attorney General pursuant to statutory authority contained in 18 U.S.C. § 923(g)(1). However, this statute allegedly grants "substantial and nearly unfettered discretion to create unguided and unintelligible regulations" to the Attorney General and thus runs afoul of the non-delegation doctrine, which imposes limits on the amount of authority that

4

Congress may devolve to executive branch officers. (DE 72 at 16 n.1.) Besides this conclusory assertion of how much authority § 923(g)(1) confers on the Attorney General, Mr. Valentine's argument consists of a single citation to legal authority. This footnote is without meaningful explanation of the non-delegation doctrine, or application of the doctrine to the facts at issue in this case.

This is simply not the appropriate way to present arguments before a court. As such, the Court finds this argument to be waived as underdeveloped as it does not actually describe the legal standard which the Court should be applying or make any effort to apply that standard to the facts at issue in this case. *Shipley v. Chi. Bd. of Election Comm'rs*, 947 F.3d 1056, 1062–63 (7th Cir. 2020) (arguments that are underdeveloped, cursory, and lack supporting authority are waived); *Harmon v. Gordon*, 712 F.3d 1044, 1053 (7th Cir. 2013) (party can waive an argument by presenting it in an undeveloped footnote).

In the alternative, the Court would reject this argument on the merits. The Supreme Court has repeatedly held that a Congressional allocation of power does not run afoul of the non-delegation doctrine if Congress lays down an "intelligible principle" to which the person or body receiving the delegated authority is directed to conform. *Gundy v. United States*, 139 S.Ct. 2116, 2123 (2019) (internal quotations omitted). The Supreme Court has further characterized Form 4473 and § 922(a)(6) as part of a "*detailed scheme*" created by Congress to regulate the sale of firearms and prevent them from falling into the wrong hands. *Abramski v. United States*, 573 U.S. 169, 172–73 (2014) (emphasis added). The Court would find that Congress has provided an intelligible principle, namely implementing the statutory requirements for firearm sales, to guide the Department of Justice in exercising its authority to create Form 4473.

(b) *Binding Seventh Circuit precedent holds that Mr. Valentine's address is material information*

Mr. Valentine argues that the indictment fails to state an offense because the false address he provided cannot be considered a material misrepresentation as required by § 922(a)(6). This argument is foreclosed by binding Seventh Circuit precedent. In *United States v. Queen*, the Seventh Circuit clearly held that "Lying about a street address on an ATF Form 4473 is a material misrepresentation that violates § 922(a)(6)." 408 F.3d 337, 339 (7th Cir. 2005).

Mr. Valentine offers no reason why the holding of *Queen* would be disturbed by *Bruen*, and the Court discerns none. The reasoning of *Queen* does not involve the Second Amendment, rather it only involves issues of statutory interpretation. *Id.* at 338–39. Therefore, the Court finds it is part of the statutory construction apple cart which *Bruen* did not disturb.

Mr. Valentine's reply, in a footnote, attempts to argue that *Queen* is distinct from this case. (DE 82 at 8 n.1.) He claims

> "[*Queen*] is distinguishable in that the Court there analyzed only Form 4473 and not the broader transferee materiality requirement under § 922(a)(6). As stated in Mr. Valentine's opening brief, '[t]hough Form 4473 may require current place of residence from the transferee, because Chapter 44 does not list that as a transferee requirement or as a necessary condition precedent for firearm possession, counts 1-5 here also fail to state an offense and must be dismissed … .'"

*Id.* (citing DE 72 at 17.)

The Court finds this is not actually an argument that *Queen* is distinguishable.[2] Rather, this seems to be a segue redirecting the Court to a legal argument in the original motion without addressing adverse precedent. This original argument is that no federal statute indicates the address of residence would be material information that a prospective gun buyer must provide. The motion argues that the requirements for a place of residence are located within 18 U.S.C. § 922(b)(5), dealing primarily with records a gun dealer is obligated to maintain, while the Court should actually look to § 922(t) to determine the obligations on the buyer. (DE 72 at 17.) In *Queen* the Seventh Circuit plainly indicates that § 922(b)(5) is relevant to determining what information a gun buyer must provide and whether it is material. Specifically, the Seventh Circuit stated:

> "922(a)(6) requires a buyer to provide truthful information to a dealer about any fact material to the lawfulness of a firearm sale. Section 922(b)(5) of Title 18 in turn requires the dealer to record the buyer's place of residence, thus making a firearm sale by a gun dealer illegal unless the dealer notes the buyer's "place of residence" in records the dealer is required to maintain. Lastly, the Gun Control Act's implementing regulations require that a dealer record the buyer's "residence address (including county or similar political subdivision)" on Form 4473, which specifically asks for "No., Street, City, County, State, [and] ZIP Code." A false street address is therefore material to the lawfulness of the sale because, when the seller falsely represents his address on the form, the dealer fails to record the buyer's address, in violation of § 922(b)(5)."

---

[2] To put a finer point on it, *Queen* and Mr. Valentine's case are almost identical. Queen was charged with § 922(a)(6) violations for listing a false address on Form 4473, 408 F.3d at 338, which is almost exactly what Mr. Valentine is charged with. (*See* DE 1.) The only distinction, which is not relevant to this argument, is that Mr. Valentine is also charged with lying about being the purchaser of the firearm.

7

408 F.3d at 338–39 (internal citations omitted).

The Court finds that *Queen* squarely governs the outcome of Mr. Valentine's materiality argument and therefore it will be rejected.

(c) *Binding Supreme Court precedent establishes that straw purchasers may be prosecuted under § 922(a)(6)*

Mr. Valentine also argues that § 922(a)(6) cannot be utilized to prosecute him for straw purchasing a firearm.

This issue is squarely precluded by the Supreme Court's decision in *Abramski* which upheld the prosecution of a straw purchaser using § 922(a)(6). 573 U.S. at 193. The Court sees no basis for concluding the holding of *Abramski* was disturbed by *Bruen*. *Abramski* is a case of statutory interpretation. As the Court has previously discussed, the general statutory interpretation framework utilized by the federal courts was not disturbed by *Bruen*.

Mr. Valentine raises two arguments as to why *Abramski* should be revisited, but neither is persuasive. First, Mr. Valentine argues that *Abramski* was reliant on the interest balancing step of the pre-*Bruen* Second Amendment test. (DE 72 at 16.) This is not a faithful description of *Abramski*. The text of the decision does not mention the Second Amendment or the interest balancing test of the circuit court test. Mr. Valentine's entire argument is predicated on a footnote where the majority noted that adopting Abramski's reading of the statute "would also" have serious negative implications for efforts to control gun crime. (DE 72 at 16 (citing 573 U.S. at 180 n.7)). The mere fact that the Supreme Court recognized that there were negative practical implications of a proposed interpretation of a statute, does not magically transform a statutory interpretation case into a Second Amendment case. Moreover, consideration of the "structure,

8

history, and purpose" of the statute is a routine part of statutory interpretation which is unrelated to the interest balancing inquiry of the old circuit court test for Second Amendment challenges. *Id.* at 179.

Mr. Valentine's reply also raises a new argument that Congress' recent passage of a dedicated prohibition on straw purchasing means *Abramski* would have a different outcome if decided today. (DE 82 at 7); *see* 18 U.S.C. § 932. The Court rejects this argument for three reasons. First, it is inappropriate to raise new arguments in a reply brief. Accordingly, this argument is denied as waived. *White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021) ("[A]rguments raised for the first time in [a] reply brief are waived because they leave no chance to respond." (internal citations omitted)). Second, this argument is based on speculation about how the Supreme Court would approach *Abramski* if the case were pending today. Mr. Valentine does not provide specific analysis of how the existence of § 932 would impact the reasoning of the Court's decision in *Abramski*.

Third, the Court would also reject this argument on the merits. Mr. Valentine argues § 932 should be read as narrowing the scope of straw purchase prosecutions under § 922(a)(6). He argues that *Abramski* indicates § 922(a)(6) can be used to punish a straw purchaser for buying a firearm on behalf of *anyone else*, while § 932 only prohibits buying a firearm for a person who cannot legally own a firearm or if the firearm will be used in a crime. Consequently, his reasoning goes, this signifies Congressional intent to only criminalize straw purchasing when the ultimate beneficiary of the firearm transaction is a person who cannot legally own a gun, or the gun would be used in a crime.

Mr. Valentine cites no legal authority for the proposition that the enactment of a new, largely unrelated law, should change the outcome of a previously decided statutory interpretation

9

question. Further, if Congress had sought to change the outcome of *Abramski*, then they could have modified § 922(a)(6) instead of enacting a new, freestanding, prohibition on straw purchasing. The Court assumes Congress is aware of the jurisprudence of relevant Supreme Court precedent when enacting a new statute. *Guerrero-Lasprilla v. Barr*, 140 S.Ct. 1062, 1072 (2020). Therefore, Congress would have known it could abrogate *Abramski* by directly modifying § 922(a)(6) instead of engaging in the roundabout effort Mr. Valentine describes.

The Court would also note that the maximum penalty under § 932 is 15 years of imprisonment, 18 U.S.C. § 932(c)(1), while the penalty for § 922(a)(6) is only 10 years, 18 U.S.C § 924(a)(2). If Congress was aware of the *Abramski* decision, then the decision to enact § 932 without disturbing § 922(a)(6) could reflect Congress' intent to prohibit all straw purchases, but more harshly punish straw purchases which are for the benefit of a criminal or criminal enterprise. Consequently, the Court finds that *Abramski* directly forecloses Mr. Valentine's argument that his false statement was not a material one.

Having disposed of Mr. Valentine's non-constitutional arguments to dismiss his indictment, the Court will now turn to his Second Amendment challenge. As an initial matter, if a statute as applied to a defendant is constitutional, then a facial challenge to that statue should also fail as the statute will not be unconstitutional in all applications. *See United States v. Salerno*, 481 U.S. 739, 745 (1987). Therefore, the Court will first address Mr. Valentine's as-applied challenge and only advance to his facial challenge if necessary.

### (2) *The Bruen standard for applying the Second Amendment*

Mr. Valentine argues that this case must be dismissed because 18 U.S.C. § 922(a)(6) is unconstitutional under the Second Amendment to the United States Constitution. Therefore, the

Court must analyze and apply the Second Amendment jurisprudence articulated by the Supreme Court.

The text of the Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *District of Columbia v. Heller*, the Supreme Court concluded that the Second Amendment confers "an individual right to keep and bear arms." 554 U.S. 570, 595 (2008). In reaching this conclusion, the Court recognized that "[l]ike most rights, the right secured by the Second Amendment is not unlimited." *Id.* at 626. In *Bruen*, the Supreme Court built upon its prior holdings to further define the scope of the Second Amendment right. The Court described its earlier Second Amendment decisions as "recogniz[ing] … the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense." 142 S.Ct. at 2122. (citing *Heller*, 554 U.S. 570; *McDonald v. City of Chicago*, 561 U.S. 742 (2010)). The *Bruen* Court went on to lay out the methodology lower courts should utilize in reviewing Second Amendment challenges.

Prior to *Bruen*, the various circuit courts had largely converged on a two-step framework for analyzing Second Amendment challenges. *Id.* at 2126. At the first step, the government could justify its regulation by establishing that the challenged law regulates activity falling outside the scope of the Second Amendment right as originally understood. *Id.* At the second step, the courts analyzed how close the law comes to the core of the Second Amendment right and the severity of the law's burden on that right. *Id.* In *Bruen* the Court stated that this test was "one step too many." *Id.* at 2127. The Court held that the first step of this framework was broadly consistent with *Heller*, but the "means-end scrutiny" of step two was inconsistent with the Second

11

Amendment and the appropriate methodology centers on the "constitutional text and history." *Id.* at 2127–29.

In *Bruen*, the Court articulated that the proper standard is as follows:

"In keeping with *Heller*, we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* at 2126 (quoting *Koningsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961)).

Phrased another way, this test is composed of two prongs. The first prong is determining whether the plaint text of the Second Amendment covers the conduct at issue. *Id.* at 2129, 2134–35. The second prong is determining whether the Government has established the regulation is consistent with the historical tradition of firearms regulation in the United States. *Id*. at 2129–30.

The Supreme Court stated that the second prong would require the use of "historical analogies" and reasoning by analogy as is commonly done by lawyers and judges. *Id.* at 2132. Consequently, in comparing a historical firearm regulation and a modern one, the key determination to be made is whether the two are "relevantly similar." *Id.* The *Bruen* Court did not provide an exhaustive survey of the features that could render regulations relevantly similar but found that *Heller* and *McDonald* outlined at least two: "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 2132–33. Phrased differently, "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are "'*central*'" considerations when

engaging in an analogical inquiry." *Id.* at 2133 (quoting *McDonald*, 561 at 767 (itself quoting *Heller*, 554 U.S. at 599)).

The Court further noted that this analogical reasoning is "neither a regulatory straitjacket nor a regulatory blank check." *Id.* While warning courts to not "uphold every modern law that remotely resembles a historical analogue," the Court also clarified that the Government is only obligated to identify a "historical *analogue*, not a historical *twin*." *Id.* (internal citation omitted). Therefore, even if a modern regulation is not a "dead ringer" for a historical precursor, it may be sufficiently analogous to pass constitutional muster.[3] *Id.*

(a) *§ 922(a)(6) does not regulate conduct protected by the Second Amendment*

The first step in the *Bruen* analysis is determining whether the regulated conduct is protected by the Second Amendment. The Court finds that § 922(a)(6) does not regulate any activity protected by the Second Amendment. As such, it is a constitutionally permissible regulation under *Bruen*.

Section 922(a)(6) states "It shall be unlawful … for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a … licensed dealer … , knowingly to make any false or fictitious oral or written statement … intended or likely to deceive such … dealer … with respect to any fact material to the lawfulness of the sale or other

---

[3] *Bruen* also stated that "when a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a *distinctly similar* historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." 142 S. Ct. at 2131 (emphasis added). Some courts have read this language as creating a more stringent standard of review for gun regulations aimed at societal ills dating to the Founding era, and Mr. Valentine suggests this Court to do the same. *See e.g. United States v. Holden*, 2022 WL 17103509, *3 (N.D. Ind. Oct. 31, 2022); *United States v. Lewis*, 2023 WL 187582, *4–5 (W.D. Okla. Jan. 13, 2023); (DE 38 at 11.) While the Court does not need to decide this issue, it will note its skepticism of this conclusion for the reasons noted by other sister courts. *See United States v. Jackson*, 2023 WL 2242873, *12–13 (D. Md. Feb. 27, 2023). Ultimately, the issue is moot in this case as the Court resolves the motion on the first prong of the *Bruen* test.

13

disposition of such firearm or ammunition under the provisions of this chapter." 18 U.S.C. § 922(a)(6).

Mr. Valentine laboriously argues that this straightforward text, prohibiting false statements in connection with the acquisition of a firearm, is actually an elaborate Trojan Horse regulation which incorporates by reference the substantive restrictions contained elsewhere in § 922. (DE 72 at 8–15.) This includes the prohibition of those under felony indictment from possessing firearms. *See* 18 U.S.C. § 922(n). In turn, the alleged constitutional invalidity of those provisions render § 922(a)(6) likewise invalid. *See Holden*, 2022 WL 17103509 (striking down § 922(n) under *Bruen*).[4]

Mr. Valentine lacks legal authority supporting this extraordinary proposition. In fact, it seems every court to consider § 922(a)(6) has concluded the statute only prohibits the conduct it expressly says that it does. In *Queen*, the Seventh Circuit characterized § 922(a)(6) as requiring "a buyer to provide truthful information to a dealer about any fact material to the lawfulness of a firearm sale." 408 F.3d at 338. The Supreme Court in *Abramski* likewise characterized it as imposing "criminal penalties on any person who, in connection with a firearm's acquisition, makes false statements about "any fact material to the lawfulness of the sale." 573 U.S. at 171.

Four sister courts, in rejecting *Bruen* challenges to this statute, have found § 922(a)(6) only prohibits making false statements, and this prohibition does not implicate conduct protected by the Second Amendment. *United States v. Soto*, 2023 WL 1087886, *5 (W.D. Tex. Jan. 27, 2023); *United States v. Combs*, 2023 WL 2144150, *2 (E.D. Ky. Feb. 21, 2023); *United States v. Gonzalez*, 2022 WL 17583769, *1 (D. Ut. Dec. 12, 2022); *United States v. Tilotta*, 2022 WL

---

[4] The Court has no occasion to review the validity of § 922(n) and determine whether it agrees with the decision in *Holden*.

14

3924282, *5 (S.D. Cal. Aug. 30, 2022).[5] Furthermore, while this motion was pending, another Judge within this District rejected a *Bruen* challenge to § 922(a)(6) substantively similar to this one and concluded that § 922(a)(6) does not burden Second Amendment protected conduct. *United States v. Campbell*, No. 2:22-CR-23-PPS-JPK, DE 31 (N.D. Ind. Mar. 15, 2023) (Simon, J.).

The Court agrees with its sister courts and will not belabor this point. Section 922(a)(6) does not create a substantive restriction on who may possess a firearm. Rather, the conduct which this section regulates is lying to the federal government about material facts during the course of firearms transactions. The fact this includes lies about whether the purchaser would be barred based on a substantive restriction contained elsewhere in § 922 does not change that. This is merely a category of lies prohibited by § 922(a)(6), the ultimate prohibited conduct is the lying. Further, the crime prohibited by § 922(a)(6) is complete once the lie has been delivered and it is immaterial if the liar ever takes possession of the firearm. *Soto*, 2023 WL 1087886 at *5. Therefore, § 922(a)(6) is not a substantive restriction on who may possess a firearm.

The conclusion that the Second Amendment does not protect the conduct of lying during the course of a firearm transaction is widely embraced by the federal courts. In rejecting challenges to 18 U.S.C. § 924(a)(1)(A), two sister courts unequivocally held lying on firearm purchase forms is unprotected by the Second Amendment.[6] *United States v. Flores*, 2023 WL 361868, *6 (S.D. Tex. Jan 23, 2023); *United States v. Porter*, 2023 WL 113739, *3 (S.D. W.Va.

---

[5] According to the Court's research, no other court has found § 922(a)(6) to be unconstitutional in light of *Bruen*.

[6] This law is similar to § 922(a)(6) and prohibits "knowingly makes any false statement or representation with respect to the information required by this chapter to be kept in the records of a person licensed under this chapter or in applying for any license or exemption or relief from disability under the provisions of this chapter." 18 U.S.C. § 924(a)(1)(A).

15

Jan. 5, 2023) (holding the Second Amendment does not allow an individual to be untruthful as to the manner and purpose for purchasing a firearm).

In addition, the Court also agrees with its sister courts that straw purchasing firearms is not protected conduct under the Second Amendment. In *Bruen*, the Supreme Court described the Second Amendment right as a "law-abiding citizen's right to armed self-defense." *Id.* at 2132–33. The Court, in discussing what it means to "bear arms" noted that the Second Amendment guarantees an individual right to "possess and carry weapons in case of confrontation." *Id.* at 2128 (quoting *Heller*, 554 U.S. at 592).

Nothing about serving as a straw purchaser implicates the purchaser's Second Amendment rights as they are not the ultimate possessor of the firearm. *Tilotta*, 2022 WL 3924282 at *5; *see also Soto*, 2023 WL 1087886 at *5–6; *Campbell,* No.2:22-CR-23, DE 31 at 11 (finding individuals who serve as straw purchasers are not law-abiding citizens protected by the Second Amendment). To the extent a straw buyer possesses a firearm, he does not possess it for the purposes of self-defense as protected by the Second Amendment, he possesses it for the purpose of transfer to another. Mr. Valentine has provided no legal authority supporting the idea that the Second Amendment protects an unrestricted right to buy, sell, or otherwise transfer firearms and the Court discerns none. *See Flores*, 2023 WL 361868 at *5 (commercial sale of arms is not protected activity under the Second Amendment); *Gonzalez*, 2022 WL 17583769 at *2 (§ 922(a)(6) does not implicate an individual's ability to defensively arm themselves. Thus, transfer of firearms without a license, and proceeds derived from that activity are likewise unprotected). Moreover, Mr. Valentine's briefing does not provide any explanation on how modestly restricting his ability to transfer firearms to another person implicates his right to self-defense.

Mr. Valentine also argues that § 922(a)(6) interferes with an individual's ability to possess firearms by imposing information requirements they must satisfy before being allowed to obtain a firearm. This is also incorrect. Section 922(a)(6) prohibits individuals from *providing materially false information* in the course of firearms transactions and other statutory provisions delineate what information is required. Mr. Valentine himself acknowledges this in his non-delegation challenge by noting Form 4473 is authorized by 18 U.S.C. § 923(g)(1). In turn, Mr. Valentine has not brought a proper challenge to the statutory provisions which actually require the production of information.

The Court doubts Mr. Valentine could prevail on such a challenge even if properly brought. No federal jurisprudence reviewed by this Court suggests the Second Amendment confers an unfettered right to acquire and possess firearms, or that requiring the production of information to establish the buyer is eligible to possess a firearm offends the Second Amendment. *See Bruen*, 142 S.Ct. at 2162 (Kavanaugh, J. concurring) (stating that objective gun licensing regimes which require background checks among other requirements are constitutionally valid); *Heller*, 554 U.S. at 627 (noting nothing in the decision should be interpreted as casting doubt on long standing regulations on the commercial sales of arms); *McDonald*, 561 U.S. at 786 (reaffirming *Heller*'s statement about the propriety of regulations on the commercial sales of arms). As a matter of basic reasoning this latter point makes sense. If certain individuals or groups can be prohibited from acquiring and possessing firearms, as is recognized under the Second Amendment, then there must be a constitutionally permissible method of screening those individuals from all prospective gun buyers. *See United States v. Skoien*, 614 F.3d 638, 640–41 (7th Cir. 2010) (en banc) (the original meaning of the Second Amendment includes some categorical limits on firearm possession).

Having found that § 922(a)(6) does not implicate conduct protected by the Second Amendment, the Court will deny the motion and has no occasion to advance to the second prong of the *Bruen* analysis.[7]

**D. Conclusion**

Accordingly, for the reasons previously stated, the Court finds that Mr. Valentine has not established he is legally innocent of the crime which he pled guilty to. Therefore, the Court finds Mr. Valentine has not shown a fair and just reason to allow him to withdraw his guilty plea and his motion to withdraw his guilty plea is DENIED (DE 72). Likewise, his motion to dismiss the indictment is DENIED. (*Id.*)

SO ORDERED.

ENTERED: March 20, 2023

/s/ JON E. DEGUILIO
Chief Judge
United States District Court

---

[7] As such, the Court also has no occasion to reach the question of whether § 922(a)(6) is a presumptively lawful regulation on the commercial sale of arms as contemplated by *Heller* and its progeny.

18